The Chancellob.
The bill is filed to set aside a bond for $750, with warrant of attorney to confess judgment, executed by Brown to Bulkley, and the judgment and execution thereon. The bond and warrant bear date on the third of May, 1860. The affidavit required by the statute to be made by the plaintiff on entering judgment was made by Bulkley, the plaintiff, on the nineteenth of May, and judgment in the Hudson Circuit, signed by a commissioner of the Supremo Court, on the same day. It appears, from the testimony (though the record is not in evidence) that the judgment was not entered of record until the twenty-first of May.
The bill alleges that, on or about the twelfth of April, 1860, the complainant, being indebted to Thomas B. Decker, of Jersey City, in the sum of $1200, proposed to secure it by a chattel mortgage on certain of his property; that reposing special trust and confidence in Bulkley, who was an attorney and counsellor transacting business in the city of New York, and who had previously acted as attorney and counsel of the complainant, he employed him to prepare the mortgage; that the papers necessary to constitute a chattel mortgage, as Bulkley represented, were drawn by him, executed by the complainant, and left with Bulkley for Decker. The paper or papers (whether one or more the complainant does not recollect) were executed by him without reading, upon his hearing them read, or their contents stated; that before the third of May ensuing the complainant was sent for by Bulkley to come to his office, and was informed by him that the chattel mortgage was good for nothing in New Jersey; that a judgment was necessary to secure the debt, and that he would prepare the papers; that, on or about the third of May, he again went to Bulkley’s office, signed the papers prepared and presented by Bulkley without reading them, signed an affidavit purporting to state that the amount was due from complainant to Bulkley (probably a clerical mistake for Becker), constituting a part of the papers prepared and read by him, believing at the time that he was signing papers to confess judgment to Decker, not supposing that he *454 was signing a paper for any other purpose; that the complainant has since discovered that the last mentioned papers, thus executed by him, were a bond and warrant of attorney to Bulkley for $750, and an affidavit of the complainant stating that he was justly indebted to Bulkley in that amount; that Bulkley falsely and fraudulently represented the papers to be a confession of judgment to Decker; that he falsely and fraudulently read them to the complainant, using the name of Decker for his own, and stating the amount due to Decker, instead of the amount inserted in the instruments; that the complainant, relying on Bulkley’s representations, signed the papers; that the complainant does not, and did not then, owe Bulkley $750, or any other sum; that not one word was said or intimated by Bulkley, or any other person, to the complainant, or in his hearing at any time, on the subject of the complainant’s confessing a judgment, or giving any other security to Bulkley, or on the subject of any indebtedness to him for which any security was expected.
The bill further charges, that the complainant’s signatures were obtained by Bulkley, to the bond, warrant of attorney, and affidavit, by the false and fraudulent pretence that said papers were a confession of judgment to Thomas B. Decker, to perfect a previous defective security to him; and that such false pretence was made, and the complainant’s signature obtained by Bulkley with intent to cheat and defraud the complainant, and that the complainant was circumvented by Bulkley in obtaining said signatures.
This charge of fraud is met by the defendant, in his answer, with a full and unequivocal denial. He admits the preparation of the chattel mortgage from the complainant to Decker, the subsequent preparation of a judgment bond as a better security for the same debt, but alleges that the bond and warrant of attorney from Brown to himself was given for a debt justly due for professional services; that the affidavit was not drawn or read by the defendant, nor executed in his presence, but was drawn by his clerk, and sworn to by the complainant while the defendant was absent.
*455 Whatever weight the answer is entitled to, it at least puts the complainant upon the proof of his case. The issue made by the pleadings is, whether the bond and warrant of attorney were procured by fraud and circumvention, as charged in the complainant’s bill. The burthen of proof is upon the complainant.
But before examining the parol proof in support of the charge of fraud, it may be advantageous to turn to the papers themselves, and to the evidence by which they are supported, to ascertain what light they shed upon the transaction. The chattel mortgage from Brown to Decker, referred to in the complainant’s bill as having been executed by him to Decker, is produced in evidence. It corresponds in amount and character with the instrument which the complainant alleges he intended to execute to Decker, but bears date not on the twelfth of April, but on the twenty-eighth of February, 1860, when the defendant, in his answer, alleges it was executed.
The bond and warrant of attorney from the complainant to Decker, which the bill charges he was induced to execute by Bulkley under pretence of bettor securing the debt to Decker, and which the complainant was induced by the false reading of Bulkley to suppose ho was signing when he executed the bond and warrant to Bulkley, are also produced in evidence. They bear date on the twelfth of April, 1860, when the defendant, by his answer, alleges they were executed. They correspond in amount and character with the instruments which the complainant in his bill alleges he intended to execute. The very instrument, the false and fraudulent reading of which constitute the means of fraud charged in the bill, and which the complainant alleges that he supposed he was executing when he signed the bond now in controversy, is produced formally executed by the complainant. There is annexed to the bond and warrant an affidavit, as required by the statute on entering judgment by confession, sworn to by Decker, before George W. Oassedy, esq., a master in chancery of this state, on the first of May, *456 1860. It is apparent that this bond and warrant must have been drawn and executed before the time when the bond and warrant given to Bulkley were executed. Bulkley, in his answer, says it was taken by the complainant on the day it was executed, and retained by him until about the first of May, when it was returned to Bulkley with the affidavit of Decker endorsed. Whether the bond to Decker was executed (as the dates of the bonds indicate) three weeks before the bond to Bulkley, or only three days, is immaterial. The material fact, that both papers ^ere executed, and that the bond to Decker was executed before the bond to Bulkley, is clearly established. How is it possible, then, that the complainant could have been defrauded by false reading of the bond in question, or been induced to execute it under the idea that he was signing this bond to Decker ?
The subscribing witness to these papers, Henry B. Weeks, is called as a witness on the part of Bulkley. He is a subscribing witness to the chattel mortgage, to the bond to Decker, and to the bond and warrant to Bulkley. .He testifies that they were executed by Brown at the times they respectively bear date; that the bond' and warrant of attorney to Bulkley were executed by Brown in the presence of the witness, no one else being present at the time; that they were read by Brown before they were executed; that the affidavit of Brown was drawn by the witness from a form furnished by Bulkley, in his absence, but in the presence of Brown, and read over by him; that it was taken by Brown to the office of Wildes P. Walker, a commissioner of deeds, and sworn to by Brown there, brought back by him, and given to the witness. The commissioner is not called as a witness, but it is not questioned that the affidavit was sworn by Brown before the commissioner by whom the jurat is signed. Brown admits this fact to be so in his bill. The papers themselves and the testimony of the subscribing witness negative utterly and most emphatically the gravamen of the bill. It is impossible to reconcile the instruments themselves with the truth of the charge of fraud made by *457 the bill. It could not have been perpetrated as charged by the complainant.
In support of the issue upon his part, the complainant, upon whom the burthen of proof lies, has offered no evidence whatever except his own testimony, which is a virtual reiteration of the charges of the bill. He is not corroborated by any other witness, nor sustained by one material fact or circumstance. The papers themselves show that his testimony is not to be depended upon and cannot be true. A court of justice would be very reluctant, whatever might be the character of the witness, to overthrow a claim founded on written documents, admitted by the party himself to have been executed by him, upon his own unaided testimony in support of a charge of fraud. There is a total failure to support this charge of the bill.
It is further urged that the relation of attorney and client subsisted between the obligor and obligee at the date of the transaction, and that the bond is therefore constructively fraudulent and the onus of proof is shifted upon the obligee.
There are two classes of contracts influenced by the relation of attorney and client, which are not clearly distinguished by the authorities, between which there is a very clear distinction, though resting upon the same general principle. The one is where the attorney deals either with his client or with others in relation to the property which is the subject matter of litigation, as where he purchases from his client the property in dispute, in regard to which he has superior means of knowledge, as well as undue influence over his client, derived from his position; or where, in the absence of his client, he purchases property sold under an execution in his hands, or with the management of which he is otherwise intrusted. In such cases the parties are regarded as standing to each other in the relation of trustee and cestui que trust, where the attorney is bound to use all his skill for his client’s interests, and the property thus acquired by the attorney will be held to be a constructive trust for the benefit of the client. Stockton v. Ford, 11 Howard 246; Howell v. *458 Ransom, 11 Paige 538; Lewis v. J. A., 4 Edwards 599; Evans v. Ellis, 5 Denio 640; 1 Story’s Eq. Jur., § 510.
In' this class of cases the principle will be applied and enforced, even after the relation of attorney and client has •ceased to exist.
The other class is where the attorney takes from his client a bond or other security as compensation for his services. • Here it is sometimes said the parties bargain at arm’s length and with equal advantages. This may be so after the relation of attorney and client has entirely ceased, but not during its continuance. He may, and often does have over his client, during the continuance of that relation, the means of influence which it would be extremely difficult to resist. In this class of cases the transaction is regarded as constructively fraudulent, in consequence of the confidential relations subsisting between the parties and the means of undue influence which the attorney may exert over his client. The bond or other security will not be set aside as void, but it will be suffered to stand as a security for the amount justly .due upon it, and the burthen will be thrown upon the attorney of showing its perfect fairness, adequacy, and propriety. Proof v. Hines, Cases temp., Talbot 111; Walmesley v. Booth, 2 Atkyns 25, 27; Newman v. Payne, 2 Vesey 200; Starr v. Vanderheyden, 9 Johns. R. 253; DeRose v. Fay, 4 Edw. Ch. R. 40; Bibb v. Smith, 1 Dana 580; Berrien v. McLane, 1 Hoffman’s Ch. R. 421.
Mr. Justice Sharswood, in his admirable lecture on “professional ethics,” for which the profession owe him a debt of gratitude (page 92), states the rule thus: “ When the relation of solicitor and client exists, and a security is taken by the solicitor from his client, the presumption is that the transaction is unfair, and the onus of proving its fairness is upon the solicitor.” This statement of the principle is fully supported by the authorities. Hill on Trustees 160 (ed. 1857), and cases in notes; 1 Story's Eq. Jur., § 310 — 313 (Red-field’s ed), and cases in notes.
The rule at first view may seem harsh, and against the *459 benignant principle of the law, that fraud is never to be prer sumed. But it rests upon broad and clear principle; and all experience has shown that it is eminently salutary in its influence, and productive of no real injury to the upright and conscientious practitioner. Such security is not per se fraudulent ; but when the consideration is challenged, it stands as security only for the amount really due.
My difficulty is not with the principle, but with the mode of applying it to the present case. The bill alleges, indeed, that the relation of attorney and client subsisted at the date of the bond (and it prays that an account may be taken before a master of the amount due from the complainant to the defendant), but it does not allege that the bond was obtained by undue influence or fraudulently for a larger amount than was really duo. The complainant denies that it is his bond; he alleges that he owed the defendant nothing; that his signature was obtained by false reading and circumvention, and prays that the bond may be declared void. He does indeed allege that at the time of the execution of the bond the relation of attorney and client subsisted between him and the obligee, and prays that an account may be taken of the sum really due. But how is an account to be taken of the amount due upon a bond which the party never gave ? and how is undue influence in the procurement of the bond to be presumed when the bill alleges that a word was never exchanged between the parties on the subject of a security for the indebtedness ?
If the obligee was before the court seeking a recovery of the amount due upon the bond, the application of the remedy would be easy. The court would suffer no more to be recovered upon the bond than was really due, and would refer it to a master to take the account. But the obligor is here to avoid the bond, upon the ground that he never gave it, and upon that ground alone he can have relief. The obligee has a judgment at law for the amount of the bond. How is this court to deal with the amount of that judgment under this bill as it is framed ? The court in which the judgment *460 was entered would seem to be the appropriate tribunal for such relief. In Starr v. Vanderheyden, 9 Johns. R. 253, the ■Supreme Court of New York held that a judgment obtained by an attorney from his client by confession for costs must only stand as a security for what is actually due, and directed an inquiry into the consideration of the bond and the amount actually due from the obligor.
Even in that aspect of the case it might here become a question how far the claim to relief might be affected by the fact that the contract was made in New York, one of the parties being a citizen of that state, and an attorney, not of the courts of this state, but of New York.
There is still another ground upon which the claim of the complainant to relief is placed. There is evidence that the bond and warrant of attorney executed by Brown in favor of Thomas B. Decker was placed by Brown in the hands of Bulkley, as Decker’s attorney, to have the judgment entered up and the debt recovered. It does not seem to be denied that, in point of fact, the bond and warrant were delivered to Bulkley, and the judgment entered up by his procurement. Bulkley denies that he agreed that Decker’s judgment should have priority over his. But if in point of fact the judgment to Decker was confessed by Brown in good faith to. secure a debt due, and not as a mere cover to his own property, the legal presumption is that Bulkley, in causing the judgment to be entered up, acted as the attorney of Decker, and not of Brown, the defendant. If so, he was bound to use due diligence in the discharge of that duty. The attorney had no right to give a judgment bond subsequently executed to himself priority over his client’s judgment. The bond and warrant to Decker was executed on the twelfth of April. On the first of May it was delivered to. Bulkley to be entered up, with an affidavit already made by his client, as required by statute. Bulkley’s bond was dated and executed on the third of May. The affidavit was ■not made till the nineteenth of May, and yet he gave his own judgment priority over his client’s : more than that, the *461 chattel mortgage, which had been executed to Decker in February previous as a security for his debt, is withheld by Bulkley, on the pretext that it was not a good security for the debt.
These circumstances constitute a gross breach of duty on the part of the attorney, and present a clear ground of equitable relief. But that relief cannot be administered under this bill. The frame of the bill is not adapted to that relief. Brown is not the party injured, Decker is not a party to the suit. Besides, if Decker is entitled to any relief, if his judgment has in fact not boon otherwise satisfied or secured, he has a perfect remedy at law. Both the judgments were confessed in the Hudson Circuit, and that court has complete control of the question of priority, and that control the court exercises upon equitable principles. Besides the chattel mortgage to Decker is still in existence.
I have given this view of the case the more consideration, and have felt disposed to afford relief on this ground, if practicable, because I am quite satisfied that this question of priority has constituted the real difficulty in the case, and that the injured party is Decker, and not Brown. The evidence before me, I think, warrants the conclusion that the real truth of the case is simply this: Brown being embarrassed, in February, 1860, executed a chattel mortgage to Decker by way of legal preference for a just debt, or to protect his property from his creditors, and placed the mortgage in Bulkley’s hands to be recorded. Bulkley visited New Jersey, and ascertained that the recording of the mortgage was not required by our statute, and that it was deemed not a safe security. The advice, therefore, that there should be a confession of judgment to secure the debt, was probably honest, and certainly wise. The bond and warrant having been executed and delivered to the attorney, that the judgment might be entered, Bulkley embraced that opportunity of securing his own honest debt, or of extorting an exorbitant demand from his client. For either purpose, the occasion was opportune. Brown may have been led to suppose *462 that the judgment to Decker was entered-up, or, as sometimes happens, may have believed that its priority in execution would give priority in payment. Under this belief, if the execution of Decker was sufficient to cover his whole property, it was a matter of comparative indifference to Brown for what amount he confessed judgment to Bulkley. The opportunity was too tempting for the attorney’s honesty. He fraudulently withheld his client’s judgment from the record, and entered up his own. This appears to me to be the sum and substance of the evidence. The cause has been greatly encumbered by evidence, offered by each party, impugning the character of his adversary. The evidence upon this point is entirely satisfactory. The parties have succeeded in this effort as perfectly as their worst enemies could desire. It has in no wise contributed to the settlement of the case or to- the ends of justice.
The case is disposed of as if the judgment had not been assigned. The assignee takes the judgment subject to all the equities which subsisted against it in the hands of the plaintiff.
The bill must be dismissed with costs.
The chattel mortgage and the bond and warrant of attorney, executed by Brown to Decker, which were offered as exhibits by Bulkley,. will be retained by the clerk subject to the further order of the court.