This action is against an attorney by a former client, to enforce a trust. The testimony produced at the final hearing developed the following facts: In the latter part of August, 1931, Lautman, on instructions received from Kauder and one Kirsch, a real estate agent, prepared a contract for the sale of certain premises in Deal, which Kauder intended to buy. Lautman advised Kauder that because of the pendency of divorce proceedings, between Appleby, the reputed owner of the property, and his wife, it would be advisable to have a title search made for the purpose of ascertaining the exact status of the title. Kauder acceded to the suggestion and the search was made. Later Lautman informed Kauder that the search disclosed that title was in the names of both Mr. and Mrs. Appleby and that it would therefore be necessary to obtain Mrs. Appleby's signature to the contract; that the divorce proceedings would not eliminate Mrs. Appleby's interest in the property, and that there was a mortgage on the property which was past due. Kauder demurred to Lautman's suggestion that he make an attempt to secure the signature of Mrs. Appleby, who was then in Arizona or Nevada, remarking that it was too much trouble, and left Lautman's office leaving the latter under the impression that he did not care to bother any more about the matter. Lautman did no further legal work for Kauder and never talked with him about this property again until shortly after it was sold by the sheriff. On September 13th, 1932, the sheriff of Monmouth county sold the property in question, at the suit of the mortgagee. Lautman attended the sale and bought the property for $11,113.62. Kauder did not attend the sale, nor have anyone attend for him, although he knew of the *Page 199 
foreclosure proceedings and the date of the sale. A few hours after the sale took place Kirsch telephoned Lautman that he had been authorized by Kauder to offer him a profit of $2,000. Lautman told him that he was not interested in any profit, as he had bought the place for a home. Kirsch had talked with Kauder two or three days before the sale, but was not requested to attend the sale for him. Kirsch did not attend the sale, but sent his wife for the purpose of bidding the property in for one Berman, but she arrived too late.
Kauder's testimony is in some respects inconsistent with the foregoing recital. However, I am satisfied that as between him and Lautman, the latter is to be believed. I have not the slightest doubt as to the truth and accuracy of Lautman's testimony in every respect.
After this suit was instituted and after the discharge of a temporary restraint against the transfer of the property, Lautman conveyed it to his wife. She was accordingly added as a defendant and it is admitted that if the complainant is entitled to relief against Lautman, the latter's wife is also bound.
Complainant's theory, as stated in his brief, is that an attorney "having acquired information about a piece of real estate while engaged as attorney to draw a contract for its purchase, to examine questions relating to the title and to advise as to the transaction and the state of the title, cannot thereafter acquire it for himself and hold it as against his client, in the absence of the express consent of his client."
This is not a case of an attorney dealing directly with his client. In such cases it has long been the rule that the attorney must show that he gave his client full and disinterested advice.Gibson v. Jeyes, 6 Ves. 266; Dunn v. Dunn, 42 N.J. Eq. 431;Crocheron v. Savage, 75 N.J. Eq. 589. In the Crocheron Case, the court of errors and appeals also recognized the distinction made in the English cases between an attorney in hoc re, and one otherwise situated. Montesquieu v. Sandys, 18 Ves. 302;McPherson v. Watt, 3 App. Cas. 254.
Lautman, at the time of the sheriff's sale, did not represent Kauder in hoc re, nor was he his general attorney, as was the *Page 200 
case in Montesquieu v. Sandys, supra. The relationship of attorney and client had ceased approximately a year prior to the sale. Complainant contends that the rule he advances continues in effect after the termination of the attorney's employment indefinitely and places great reliance upon the authority ofCarter v. Palmer, 8 Cl. Fin. 657. In that case it appeared that Carter was a barrister who had been for several years confidential and advising counsel to Palmer and had by reason of that relation acquired an intimate knowledge of his property and liabilities and was particularly consulted as to a compromise of securities given by Palmer of a debt which Carter considered not to be recoverable to the full amount. Without notice to Palmer and after ceasing to be his counsel, Carter purchased these securities for less than their nominal amount. The purchase was held to be in trust for Palmer. An examination of Lord Cottenham's opinion reveals many factual distinctions between the case and this. At page 705, the lord chancellor, after holding the defendant was both counsel and agent and charged with the disabilities of both, said:
"As agent, he necessarily became acquainted with all the circumstances connected with these securities, and most particularly with the means which existed for providing for the payment of them. * * * Such information, therefore, was applied by him to defeat the negotiation in which he had himself been engaged for his client or employer, and by substituting himself in the place of Mackmurdo, to deprive such client or employer of the benefit of a compromise which he had been endeavoring to effect, and which the terms of the purchase proved to be feasible."
There is no suggestion in this case of any such conduct on the part of Lautman.
Coles v. Trecothick, 9 Ves. 234, and Ex parte James, 8Ves. 337, cited in the Carter Case, are no authority for the complainant here. The former deals with the grounds on which a purchase by a trustee from the cestui que trust may be supported; and the latter was a case where the solicitor to a commission in bankruptcy bought property sold under the commission without the previous consent of the creditors. *Page 201 
Many similar cases have been collected in complainant's brief, wherein an attorney has purchased lands from his client, or has purchased an outstanding or adverse interest in lands, title to which the attorney had been employed to perfect for his client, and among which are Eoff v. Irvine, 108 Mo. 378; Henry v.Raiman, 25 Pa. 354; Downard v. Hadley, 116 Ind. 131; Baker v.Humphrey, 101 U.S. 492. But these cases are all based upon an abuse of the confidential relation by means of which the attorney would benefit and the client would suffer a loss if the transaction were allowed to stand. The principle they support is altogether sound, and should be vigorously sustained wherever the facts bring the cases within the limits of the rule. These cases are not, however, applicable to the situation here presented. In addition to the authorities cited in the briefs, I have made an exhaustive examination of cases in other jurisdictions (more than one hundred in number) dealing with somewhat similar phases of the attorney and client relationship, but have found none which support the contention of this complainant.
Lautman had no duty to perform inconsistent with his purchase — his employment had ceased a year previously under conditions clearly indicating that Kauder did not want to bother with the property and that he did not expect Lautman to do anything further for him in relation to it. He had not been employed to perfect a title then existing in his client; nor did he buy an outstanding interest in property in which his client had an interest. Kauder had no interest in the property comparable to those existing in any of the reported cases, for he had not even signed a contract with Mr. Appleby. The rule to be here applied is stated in 16 R.C.L. 113 tit. "Judicial Sales" § 80, as follows:
"After the relation of attorney and client has ceased, it seems that there is no objection to the attorney's becoming the purchaser of property at a judicial sale in which his former client is interested, where there is no evidence of undue steps having been taken by him to the prejudice of his former client, or of his having used for his own advantage information acquired in his professional employment. And where counsel is merelyconsulted as to the state of the title to *Page 202 land which is subsequently sold, he is not prohibited frombecoming the purchaser thereof, where he has given the correctadvice concerning the liens on the property." (Italics mine.)
But complainant contends that the rule stated in Scheel v.Jacobson, 112 N.J. Eq. 265, should be applied. That rule is stated by Mr. Justice Bodine, speaking for the court of errors and appeals, in the following language:
"The law in this state relating to the relation of attorney and client is well settled. The relationship is highly confidential; if the attorney uses information acquired by him through his professional relation with his client in order to purchase property, the subject of the professional relationship, he is presumed to act for his client's benefit (Brown v. Bulkley,14 N.J. Eq. 451; Crocheron v. Savage, 75 N.J. Eq. 589); his purchase of his client's property is subject to close scrutiny and such a purchase is usually voidable at the instance of the client. Condit v. Blackwell, 22 N.J. Eq. 481; Cleine v.Englebrecht, 41 N.J. Eq. 498; Dunn v. Dunn, 42 N.J. Eq. 431."
There can be no quarrel with that statement, but in order to properly determine the limits of the rule, the sentence must be read as a whole. If this is done it will readily be seen that the general statements in the first part of the quotation apply to the purchase by an attorney of his client's property. The first clause of the sentence cannot be lifted bodily from the whole and considered apart from the context for the purpose of applying it to the case at bar. Nor can it with reason be said that in stating the rule the court intended its application to be so broad as to cover a situation such as that now under consideration. The opinion, like a will, must be read from its four corners and the rule stated viewed in the light of the facts and circumstances of the case in which it is stated and must be applied accordingly. The Scheel Case itself does not support such a general application, for that case dealt with the transfer of title to an attorney for the purpose of enabling his client to perpetrate a fraud. The key to the court's meaning is found in the decisions cited as authority for the statement. Nor do those cases support *Page 203 
complainant's contention. Brown v. Bulkley, cited in the opinion, involved a charge of fraud arising from a transaction between the attorney and his client; in Crocheron v. Savage
the complainant asked the court to set aside a deed made by her to her attorney in the course of his employment to negotiate the sale of the land conveyed; the object of the bill filed inCondit v. Blackwell was to set aside a deed from a client to his attorney; in Cleine v. Englebrecht the attorney fraudulently obtained a conveyance from his client; and Dunn v.Dunn dealt with the assignment of a mortgage by the client to her attorney. Clearly there is nothing in the Scheel Case nor in the cases cited therein to justify an expansion of its altogether sound doctrine to the extent sought by the complainant here.
Counsel for complainant, in his brief, has quoted at length from the opinion of the Pennsylvania supreme court in Galbraith
v. Elder, 8 Watts 81, and in view of the reliance placed upon that decision, it would be well to consider it in the light of other decisions of the same court. In Dobbins v. Stevens
(1827), 17 S. R. 13, the defendant, who was consulted concerning the title to land about to be sold under an execution, correctly advised that the sale would be subject to certain liens. The client decided not to attend the sale. The attorney attended the sale and bought the property, whereupon an attempt was made, as here, to compel him to convey the lands to his client. Chief Justice Gibson, after holding that there was no fraud, disposed of the issue in these words:
"The question then is, whether a counsel who has been consulted about a title which is going to be sold on an execution, is to be excluded from becoming a purchaser. I cannot discern the policy of the rule which should disqualify him. A trustee may not purchase at his own sale, because, being both buyer and seller, he would have it in his power to purchase at his own price; and as his motives could rarely be penetrated, the facility with which he might accomplish a fraudulent purpose, at but little risk of detection, would offer a temptation which ought not to be cast in the way of anyone. *Page 204 
In such a case as the present, there can be no such temptation. If the counsel were to advise erroneously, it would be easy to show it; * * * If no one has been injured by advice which it was proper for the counsel to give, and for the client to receive, who shall complain?"
Galbraith v. Elder, supra, which was decided in 1839, twelve years after the Dobbins Case, was an ejectment suit brought by an attorney against the heirs of a former client who had employed him to perfect the very title which was the subject of the litigation. Obviously, the strong language used by the court in that case was thoroughly justified. It is equally clear that it was not intended to disapprove or overrule the principle of the Dobbins Case. This is manifest from the absence of any express disapproval (and an opinion by the court's chief justice could scarcely have been overlooked), and the fact that shortly after the Galbraith decision, and at the same term, in an opinion published in the same volume of the reports, the same court held that the employment of an attorney to prevent the condemnation of real estate upon an execution, does not create such a relation between him and his client as precludes him from becoming a purchaser of the estate when sold by the sheriff.Devinney v. Norris, 8 Watts 314. This court is in full accord with the salutary expressions in the Galbraith Case, but the rule of that case has no application here. The force of theDobbins holding continues unabated and applies with singular appropriateness to the facts of this case. Neither Henry v.Raiman, supra, nor Smith v. Brotherline, 62 Pa. 461, also cited by complainant, modify or in any degree weaken Chief Justice Gibson's holding. In the former case the attorney bought an outstanding interest and attempted to hold it in opposition to a title he had been employed to defend; and in the latter sued his former client in ejectment after purchasing property adjoining that which he had secured for his client.
In Clark v. Delano, 205 Mass. 224; 91 N.E. Rep. 299, it was held that a broker who had been employed to secure a loan with which to pay off a mortgage, and failed to secure the loan, was not prevented from becoming a purchaser on *Page 205 
his own account at the foreclosure sale. That case dealt with a broker instead of an attorney, but the decision did not rest upon any distinction between the duty due a principal by an attorney, broker, or other type of agent.
In Baker v. Davis, 35 Iowa 184, it was held that an attorney who has conducted a foreclosure suit to completion, even though he has not yet delivered the sheriff's deed to his client, is not thereby disqualified from afterward purchasing the land at tax sale. And Humphrey v. Hurd, 31 Mich. 436, held that where a client, seeking to acquire title to land, refused to take up a claim on it of which his attorney notified him, the attorney violated no confidence in buying up the claim in the interest of another party; and that the title thus obtained would not be invalidated by the previous relations between the attorney and his client.
Language peculiarly applicable to the facts of this case was employed by the supreme court of Mississippi in holding that an attorney was not precluded from buying property at a tax sale, after he had drawn a will by which the land was devised, and had also advised as to the collection of rents of the land.
"There was no litigation about the land. He had no charge, or trust, or confidence as to it. He owed no duty to appellee in reference to it. He could not buy for himself an outstanding title existing when he wrote the will, but there was no hindrance to his buying the paramount title subsequently arising from the non-payment of taxes and the sale of the land therefor. He could not do anything inconsistent with his duty to his client, as to the matters about which he was consulted; but his duty as to this land was not a continuing one, and had ended before the claim of the state to sell it arose. He could not use for his own advantage information acquired in his professional employment, but such disability could have no application to the sale of the land for taxes, which was the act of the state, wholly independent of any agency of appellant, and unaffected by any knowledge he may have had * * *." Bowers v. Virden, 56 Miss. 595.
So here, the title of this property was not the subject of *Page 206 
litigation; Lautman was not charged with procuring the title; and his employment had ceased approximately a year prior to the sheriff's sale. The land was sold at the instance of the mortgagee, whose acts were wholly independent of Lautman and for which the latter was in no way responsible. The paramount title purchased by Lautman arose subsequent to the termination of his employment, from the non-payment of the amount due on the mortgage and the sale of the land therefor. Lautman had told Kauder of the existence of the mortgage; the latter knew of the pendency of the foreclosure proceedings and had full knowledge of the time and place of the sale, yet he neither attended the sale personally nor had a representative attend for him. He testified that he neither asked nor expected Lautman to attend the sale for him; that he himself had no intention or desire to bid the property in; and that he was not interested in the sale. Under such circumstances, it cannot be said that Lautman made use of information acquired in his professional employment, to the prejudice of his former client. It should also be noted that Lautman's knowledge that the property was to be sold by the sheriff was not obtained during the course of his employment, nor as a result thereof; but was obtained through the publication of the sheriff's advertisement in a local paper. The foreclosure proceeding had not even been begun at the time of Lautman's employment; nor, so far as the evidence shows, even thought of.
"It cannot be the law that an attorney, in the absence of fraud, or an abuse of confidence in some way, is forever debarred from acquiring property, honestly and in good faith," solely because at one time a former client had intended to buy that property, and had employed him to prepare a contract which was never executed. Harrison v. Murphy, 130 Okla. 548;135 Pac. Rep. 1137; 49 L.R.A. (N.S.) 1060.
Kauder's failure to sign the contract himself; his failure to make any attempt to secure the signature of Mrs. Appleby, and his failure to attend the sale or to ask anyone to attend for him, although he knew when the sale was to take place, indicate beyond question that he had lost all interest in acquiring *Page 207 
the property. The apparent motive for this action lies in the circumstances surrounding the disruption of the long-standing friendship between these two men, evidenced by a letter written November 18th, 1931, in which Kauder told Lautman: "I know ethics come first with you and friendship after," a charge which reflects credit on Lautman's standing as a lawyer. The complainant will not be permitted to satisfy a grudge or a jealous motive at the expense of a reputable attorney who has acted honestly and fairly in every respect. The bill will be dismissed.