This is an appeal from a decree of the Court of Chancery dismissing the complainants' bill which prayed that the defendants be decreed to hold title of the lands in controversy in trust for those including the complainants who are equitable owners thereof. This is the important question presented although there were other prayers in the bill ancillary to this relief sought by the complainants.
The bill alleged that in 1912 complainant Peter Schenck retained James Mercer Davis, Sr. (a member of the bar of this state), to bring suit against one Roydhouse on a promissory note. Judgment by default was recovered. The attorney had been retained to conduct the litigation on a contingent basis so far as his fee was concerned. At about the same time the said attorney represented one William K. Haines in a suit against Roydhouse and judgment by default was entered in each suit. About two years prior to the institution of these suits Roydhouse and his wife had conveyed the farm owned by them to a nominee who in turn reconveyed to Mrs. Roydhouse. In 1914 Mr. Davis, Sr., as attorney for Schenck and Haines, filed a bill in the Court of Chancery to set aside the conveyance just mentioned, charging a fraud upon creditors. The final result of that adjudication was that the said deeds were set aside and decreed to be null and void in so far as the judgments of Haines and Schenck were concerned. It appeared, however, that prior to these conveyances which had been voided, there had been granted and conveyed to Mrs. Roydhouse a life estate in the farm property. Therefore the judgments of Haines and Schenck became liens on the farm land subject only to the life estate of Mrs. Roydhouse. It also appeared that Mrs. Roydhouse was a sister of the judgment creditor, Schenck. She subsequently was divorced from her husband and married one Holbrook. Her life estate continued until November 5th, 1940, when she died. In 1916, Haines died leaving his estate to his wife, Mary. The two judgments recovered in 1912 were revived by writ of scire facias on the application *Page 377 
of Mr. Davis, Sr. At the time of the revival in 1932 the Haines judgment amounted to $4,715.13 and the Schenck judgment amounted to $9,547.96. The former judgment had priority in point of time. After the death of Haines, Mr. Davis, Sr., purchased that judgment for the sum of $500. The following year, 1933, the bill of complaint alleges, Mr. Davis, Sr., offered to sell his contingent interest in the Haines judgment to Schenck for $500 or to purchase the Schenck judgment for the same amount. The testimony of the defendant indicated this happened in 1932. Schenck rejected both propositions and says that since that time he has had no communication from Mr. Davis, Sr., who, as he claimed, still represented him as attorney. On September 16th, 1932, Mr. Davis, Sr., caused executions to be issued on both judgments. The sheriff of Burlington County, wherein the lands were situated, was instructed to advertise the farm lands and premises for sale. Schenck alleges that his attorney, Davis, Sr., did not send him a copy of the advertisement of the sale of the lands and that he had no knowledge thereof until December 1st, 1932, the day of sale, when he received a telegram at his home, Vineland, Cumberland County, advising him of the sale. The telegram was not received until two o'clock in the afternoon and it appears from an exhibit in the case that it was sent from Camden at 11:43 in the forenoon of the same day. Schenck claimed that it was not possible for him to attend the sale for lack of sufficient notice and the bill alleges that he assumed that Davis, Sr., "would protect his interests." The property was bought in by Mr. Davis, Sr., at the sale under the Haines judgment for the sum of $500 and the complainant charges that Davis, Sr., thereupon became a trustee of the said lands for the benefit of Schenck to the extent of his interest therein. The bill also alleges and it is not denied that Davis instructed the sheriff to apply the amount of his bid in partial satisfaction of the Haines' judgment and also directed the sheriff to return the execution on the Schenck judgment unsatisfied. Some four months later the sheriff, at the direction of Mr. Davis, Sr., executed a deed to the premises to James Mercer Davis, Jr., a son of the defendant, Davis, Sr. The sale took *Page 378 
place December 1st, 1932; the sheriff's deed was executed April 3d 1933, and recorded on August 10th, 1937.
It is also charged in the bill that Davis, Jr., was not a bonafide purchaser; that no consideration was paid by him either to the sheriff or to his father, and that he took title with full knowledge of all the facts and was a party to a perpetration of fraud upon Schenck. Complainant further avers that he was entirely ignorant of what transpired and points to the fact that the sheriff's deed was not recorded until August 10th, 1937, which was a period of almost five years after the sale; that Davis, Sr., never terminated his relationship as attorney for Schenck; that Schenck had not dismissed him or obtained the services of any other attorney until September 20th, 1939. Schenck avers, however, that subsequent to the sale he telephoned the office of Davis, Sr., and learned that the land and premises had been bought by Davis, but he further avers that he believed that inasmuch as all prior proceedings theretofore brought by Davis, Sr., as attorney in the matter of the two judgments, had been carried on for the benefit of both judgment creditors, he believed that the purchase by the attorney was likewise for the protection of Schenck's proportionate interest in the property. He also alleged that he was aware that Mrs. Roydhouse, his sister, had a life estate in the said premises and that nothing could be done to obtain possession of the farm land until her death; that he had no reason to inquire into the matter so long as his sister lived; that he learned, however, from his sister that at the instance of James Mercer Davis, Jr., John S. and Edwin Davis, sons of the defendant, Davis, Sr., a "writ of waste" had been issued out of the Court of Chancery against his sister (Mrs. Holbrook) whereupon he consulted counsel and the present suit was instituted. It is also alleged that previously James Mercer Davis, Jr., and his wife, at the instance of Davis, Sr., made conveyance to two other sons of Davis, Sr., purporting to convey to each son an undivided one-third interest in the lands and premises, which deed was dated December 21st, 1937, and recorded October 25th, 1939; that no consideration passed for this conveyance and that these defendants are, under the circumstances, *Page 379 
to be held as trustees for complainant to the extent of his interest in the farm; that this situation was unknown to him until he learned same from his solicitor on September 20th, 1939. The complainant also avers that his wife, Caroline, has an inchoate right of dower in that undivided portion of the lands and premises to which he claims equitable title.
Complainants, in addition to the main prayer, pray for partition or, in the alternative, that the lands be sold and the proceeds divided.
The answer of Mr. Davis, Sr., admits the relationship of attorney and client between himself and Schenck; that he undertook this particular case upon a contingent fee basis of fifty per cent.; that the Haines' judgment was obtained prior to the Schenck judgment. He denies, however, that Schenck had not been informed concerning the whole matter or that Schenck had not been advised about the sale. He also denies that there had been any subterfuge in placing title in the name of his son; denies that this information was withheld from Schenck; denies that there was lack of consideration between Davis, Jr., and his father, and that there was no consideration between John, Edwin and James for the interest acquired by the two brothers who were subsequent grantees. It was also denied that the complainants or either of them have any right, title, or interest in any part of the premises.
The case was referred to Vice-Chancellor Fielder and heard by him, but because of his illness when the hearing was finished, the matter was transferred to Vice-Chancellor Kays who decided the case on the transcript of the testimony and the exhibits after hearing counsel orally. Mr. Davis, Sr., said in his testimony that prior to sale on December 1st, 1932, accompanied by an employee in his office who was also a member of the bar, Elizabeth B. Cole, he called on Mr. Schenck in Vineland. He said he advised Schenck that the property would be sold under the Haines judgment and that he, Davis, as owner thereof, intended to protect his own interest at the sale. It was on this occasion that Davis, Sr., offered to sell the Haines judgment for $500 or to buy the Schenck judgment for the same amount. Schenck recollected this occurrence but did not remember being advised to protect *Page 380 
his interest at the sale. Davis, Sr., admitted that he had revived the Schenck judgment without authority so to do, and that at that time he considered Schenck his client. He also admitted that he did not notify Schenck that the judgment had been revived, his excuse being that "he wasn't sure where he lived."
It is clear from the testimony in the case that Schenck realized in a general way that his judgment could not be satisfied until after the death of his sister, and it also seems reasonable to conclude that prior to the sale in 1932 Schenck would not have refused to buy the Haines judgment for $500 or sell his own for the same amount if he thought that his judgment would be of no value unless he first paid off the amount of the Haines judgment at the sheriff's sale.
Vice-Chancellor Kays was impressed by the fact, as he says in his opinion, that Schenck "did nothing for seven years," even though he knew that Davis, Sr., had bid in the property at the sale in 1932. But this, we think, is not dispositive of the case under the facts if, as Schenck maintains, he was not notified by his counsel that he was no longer acting for him in the matter and that the relationship between them of attorney and client was ended. We find no testimony in the record that Mr. Davis did say to Schenck expressly that he had withdrawn as his attorney but only that Schenck would have to protect his own interest. After the judgment had been revived in 1932, Davis, Sr., in his testimony, admitted that he still considered Schenck his client and that he "owed him a duty." This statement was made in answer to a question put by Vice-Chancellor Fielder. But no claim is made in the testimony of Mr. Davis or his secretary, Miss Cole, that when they visited Mr. Schenck a month before the sale, Davis told him that the relationship of attorney and client was ended. Mr. Davis advised the client, according to the record, that he ought to attend the sale and was insistent that he do so; that he (Mr. Davis) owned the Haines judgment and that he did not know how much the farm would bring at the sale. The ordinary lay person knows little about sales on execution conducted by a sheriff as selling agent and under the circumstances the normal thing for *Page 381 
counsel to have done would be to tell the client that he was no longer his attorney and to get some other lawyer to represent him. This was not said to Schenck by Mr. Davis or anyone else. The telegram sent to complainant by Mr. Davis on the day of the sale does not clearly support the defendants' position. First it was not sent in due time; again it read "do you have any instructions or will you be present." If no relationship existed why did Mr. Davis invite instructions? It is open to the inference that Mr. Davis still considered he had a duty to Schenck.
As to the matter of laches, on which chiefly the case was decided: Even though nothing was done by Schenck until 1939 there was no prejudice to the adverse party. No such change has occurred as would render it inequitable in 1939 to enforce Schenck's interest. The relationship of attorney and client, being one of great confidence, is necessarily subject to the closest scrutiny where it might appear that the attorney had taken advantage of the client.
The claim of the defendants is that the relationship had been terminated. This is rested, according to the defendants, on conduct, on what Mr. Davis claimed he said to Schenck about protecting his interest, and on the telegram. The telegram does not help the defendants. The conduct of Schenck, that is, his delay, is understandable since he knew his sister's life estate was outstanding and that she was still alive. The fact issue between the parties is in the small compass of what it is claimed Mr. Davis said to his client and what the client said in return and understood at the time. On this issue we cannot find sufficient proof to justify a conclusion that the relationship of lawyer and client had been terminated and that Schenck realized it, or that such intended termination of the relationship was brought home to him so that he should have realized it. The proof on this crucial point is vague and uncertain. Davis, Sr., says it was terminated and Schenck, a man who from his testimony appears to be unaccustomed to transactions of this kind, says it was not. The property in question was advertised for sale under both judgments and this at the instance of Davis, Sr. If this was the situation, then Davis, Sr., attended the sale as an *Page 382 
attorney for Haines by virtue of the Haines judgment (which he owned entirely by unrecorded assignment) and ostensibly as attorney for Schenck under the Schenck judgment. Under these facts we think Mr. Davis, Sr., was still under a duty to his client, Mr. Schenck.
We do not find, however, that Mr. Davis, Sr., or his sons, were guilty of any conduct amounting to moral turpitude. But we do find that Mr. Davis did not inform his client in clear terms so that Schenck understood the situation that the adverse interest of Mr. Davis prompted him to have Schenck shift for himself thereafter and that he was no longer his attorney. A notice to a client that his lawyer no longer represents him should be timely, clear and unmistakable. There was no such notice here. No writing was sent to the client by the attorney terminating the relationship. The oral notification claimed was neither clear nor unequivocal. The cases cited by the appellant, concerning the fraud on the part of an attorney, are not applicable. We find no intentional fraud. Where, however, an attorney has a financial interest adverse to that of his client, the court leans "most strongly" against the attorney. Perkins v. Deal Beach RealtyCo., 92 N.J. Eq. 526; see Dwyer v. Anderson, 113 N.J. Eq. 210; Raimondi v. Bianchi, 100 N.J. Eq. 238; In re Romaine'sWill, 113 N.J. Eq. 477; affirmed, 115 N.J. Eq. 173. In this case we do not think there was laches. Compare Crandall v.Garrison, 115 N.J. Eq. 11; McCartin v. Traphagen, 43 N.J. Eq. 324; Johnson v. McKenna, 76 N.J. Eq. 217. We cannot agree, as argued below and as found by the court that Schenck "abandoned his attorney." If he did, the normal and business-like thing to do would be to have obtained other counsel and this is what he did when he learned the true situation. Schenck's contention that he thought nothing could be done in the matter of satisfying his judgment until the death of his sister, Mrs. Holbrook, is consistent with his conduct. He learned, he says, for the first time when suit for waste was instituted, that the title to the lands by the sheriff's deed, was not in the name of his attorney, Mr. Davis, Sr., but in the name of James Mercer Davis, Jr. This information he got from the attorney who represented his sister, Mrs. Holbrook. Thereafter he filed this bill. *Page 383 
When the relationship of attorney and client has been established, the duty of acting for the interest of the client is a continuing one. If the attorney acquires an interest antagonistic to his client's interest (and here his original interest was enlarged by the purchase of the Haines judgment) he may not profit by it without the express consent of his client, to whom all of the facts have been made known. Where conflict arises as in this case, it is the burden of the attorney to show such facts to the court as will exonerate him, otherwise he will be considered a trustee for whatever benefit is acquired at the client's expense. The proofs in this case do not convince us that Mr. Davis, Sr., discharged that burden. Compare 7 Corp. Jur.Secundum 960-963, § 126. Kauder v. Lautman, 114 N.J. Eq. 197;affirmed, 116 N.J. Eq. 145, is not to the contrary; also seeWeeks on Attorneys at Law 559-560.
The decree under review should be reversed, with directions to the Court of Chancery to revise its decree in a manner not inconsistent with this opinion.
For affirmance — None.
For reversal — THE CHIEF-JUSTICE, PARKER, CASE, BODINE, HEHER, PORTER, COLIE, DEAR, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 12.